UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRYL PARKER                                     CIVIL ACTION

VERSUS                                            NO: 06-5947

JACKUP BOAT SERVICE, LLC, ET                      SECTION: "A" (1)
AL.

## ORDER AND REASONS

Before the Court are a **Motion for Partial Summary Judgment (Rec. Doc. 49)** filed by

Plaintiff, Darryl Parker, and a **Motion for Summary Judgment (Rec. Doc. 50)** filed by defendants

Trinity Catering, Inc. ("Trinity"), Jackup Boat Service, LLC ("Jackup"), and Elevating Boats, LLC

("Elevating Boats"). Both motions are opposed. The motions, set for hearing on November 14,

2007, are before the Court on the briefs without oral argument. Having considered applicable law

and the arguments presented by counsel, the Court concludes that Plaintiff's **Motion for Partial**

**Summary Judgment (Rec. Doc. 49)** should be **GRANTED IN PART AND DENIED IN PART**

and that the **Motion for Summary Judgment (Rec. Doc. 50)** filed by Defendants should be

**DENIED** for the reasons that follow.

## I.      BACKGROUND

The instant dispute arises out of an accident that occurred while Plaintiff, Darryl Parker, was

working aboard the L/B MAMMOTH ELEVATOR, owned by Jackup and operated by Elevating

Boats. At the time of the accident, Plaintiff was employed by Trinity as a steward.

According to Plaintiff, on or about May 26, 2006, he was working aboard the L/B

MAMMOTH ELEVATOR, an offshore vessel operating in the Gulf of Mexico at that time.  (Pla. Amended Compl. ¶¶ V-VI.)  Plaintiff was sitting in a chair aboard the vessel when a chair leg "suddenly and without warning" broke, causing him to fall backwards and strike his head on a steel wall.  (*Id.* at ¶ VII.)  Plaintiff alleges that as a result of this accident, he received serious injuries to his neck, head, and other parts of his body.  (*Id.* at ¶ VIII.)

Plaintiff submits that the chair involved in the accident was owned by Jackup and/or Elevating Boats and/or Superior Energy and/or Devon Energy.  (*Id.* at ¶ VII(A)).  At the time of the accident, the L/B MAMMOTH ELEVATOR allegedly was under contract with Devon Energy.  (*Id.* at ¶ VII(B)).  After the accident, Plaintiff alleges that the company man for Devon Energy directed the vessel's crew to throw away the chair.  (*Id.* at ¶ VII(C)).

Parker's last day of employment with Trinity was June 14, 2006, aboard the HERCULES JACKFISH.  (Pla. Mem. in Supp. p. 7) (citing Pla. Exh. 3, Depo. of Trinity Catering, Inc. p. 13, lines 9-17.)  Before leaving the HERCULES JACKFISH, Parker was sent back to the CROSS MAR 15; however, "he was dissatisfied with the organization and left the CROSS MAR 15 for that and personal reasons."  (*Id.* at p. 7-8.)

Plaintiff filed the instant action on September 14, 2006, against Jackup, Trinity, and their respective insurance agencies, seeking  maintenance and cure under the general maritime law, as well as damages for negligence and unseaworthiness.  On July 20, 2007, Plaintiff obtained leave of court to file a Supplemental and Amending Seaman's Complaint, in which he added the following entities as defendants: Elevating Boats, Superior Energy Services, Inc., and Devon Energy Production Company, L.P. and/or Devon Louisiana Corporation.  (Pla. Amended Compl. ¶ I.)

2

Plaintiff moves for partial summary judgment.  Specifically, Plaintiff seeks to have the issue of whether he is a seaman resolved by summary judgment, as the issue controls what type of claims he may pursue against his employer.  (Pla. Mem. in Supp. p. 1.)   Furthermore, Plaintiff requests summary judgment on the issue of unseaworthiness.  (*Id.* at p. 2.)  It is Plaintiff's position that the chair involved in the accident was an appurtenance to the vessel which was "clearly unseaworthy." (*Id.*)

Concomitantly, Defendants move for summary judgment, seeking the dismissal of the maintenance and cure and unseaworthiness claims of Plaintiff on the grounds that he is not a seaman under the Jones Act.  (Def. Motion p. 1.)  According to Defendants, Plaintiff cannot establish a more or less permanent assignment or connection to a vessel, or identifiable fleet of vessels, that was substantial both in terms of duration and nature at the time of the incident that is the subject of this litigation.  (Def. Mem. in Supp. p. 1.)  In addition, Defendants contend that the *McCorpen* defense bars Plaintiff's claim for maintenance and cure.  (*Id.*)

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  A dispute about a material fact

3

is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), then the non-movant must come forward with "specific facts" showing a genuine issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### B.      Seaman Status

Seaman status is an element of Plaintiff's case, and he bears the burden of proof for establishing seaman status. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003). Although seaman status is usually a question for the jury, judgment as a matter of law is mandated where the facts and law will support only one conclusion. *Id*. at 386.

#### 1.      *The Parties' Contentions*

Plaintiff contends that he is a seaman, as he submits that "the undisputed facts clearly show that Darryl Parker performed the vast majority of his work aboard vessels." (Pla. Mem. in Supp. p. 10.) According to Plaintiff, the Employee Job History establishes that "just under half of Darryl Parker's time was spent aboard a single vessel, the CROSS MAR 14." (*Id.*) Plaintiff suggests that

4

the Court add Plaintiff's time aboard the CROSS-MAR 14 to the time worked on another vessel under common ownership and control, the CROSS MAR 15, in which case Plaintiff "spent over half of his time on vessels under common ownership or control"  (*Id*.)  Citing "the law that a seaman does not walk into and out of seaman status," Plaintiff argues that once he established seaman status, the location of the accident is not relevant to his status unless Defendants demonstrate a specific change in Plaintiff's duties.  (Pla. Mem. in Opp. p. 3.)

On the other hand, Defendants assert that Plaintiff is not a seaman.  According to Defendants,  Trinity, by its very nature, does not permanently assign its employees to work on a particular vessel or for a particular company.  (Def. Mem. in Opp. p. 3-4.)  Defendants observe that Plaintiff spent less than two-percent of his time at sea aboard the L/B MAMMOTH ELEVATOR.  (Def. Mem. in Supp. p. 13.)  Moreover, Defendants contend that the "fleet doctrine" does not apply.  Defendants highlight the fact that the L/B MAMMOTH ELEVATOR was not part of an identifiable group of vessels under common ownership or control on which Plaintiff performed a significant part of his work.  (Def. Mem. in Opp. p. 3-4.)  Finally, Defendants argue that the "classical seaman's work" exception does not apply.  (Def. Mem. in Supp. p. 15.)

## 2.    *Law and Analysis*

The Jones Act, 46 U.S.C. app. § 688, provides a cause of action against a plaintiff's employer grounded upon negligence.  *Becker*, 335 F.3d at 386.  To maintain a cause of action under the Jones Act, the plaintiff must be a "seaman."  *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999).  Land-based workers are not seamen and therefore have no claim for Jones Act negligence.  *Id.* (citing *Harbor Tugs & Barge Co. v. Papai*, 520 U.S. 548, 117 S.Ct. 1535, 137

L.Ed.2d 800 (1997)).  A land-based maritime worker's recourse against his employer lies with the LHWCA – a no fault worker's compensation scheme.  *Becker*, 335 F.3d at 387 (citing 33 U.S.C. §§ 905, 907(a)).  The Jones Act and the LHWCA are "mutually exclusive" compensation schemes.  *Id*. at 386 (quoting *Harbor Tug & Barge Co.*, 520 U.S. at 553).  Thus, if Plaintiff satisfies the criteria for being a seaman, then he is covered by the Jones Act.  *Id.*  If he does not, then he is protected only by the LHWCA.  *Id.*

The Supreme Court articulated a two-part test for determining seaman status.  First, Plaintiff's duties must contribute to the function of the vessel or to the accomplishment of its mission.  *Id.* at 387 (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995)).  Second, Plaintiff must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in duration and nature.  *Id.*  A fleet of vessels is any identifiable group of vessels acting together or under one control.  *St. Romain v. Industrial Fabric & Repair Serv., Inc.*, 203 F.3d 376 (5th Cir. 2000).  The Fifth Circuit has rejected the notion that a fleet of vessels means "any group of vessels an employee happens to work aboard."  *Campo v. Electro-Coal Trans. Corp.*, 970 F.2d 51, 52 (5th Cir. 1992) (quoting *Barrett v. Chevron, USA, Inc.*, 781 F.2d 1067 (5th Cir. 1986)).

The Supreme Court observed that satisfying the first prong of the test is relatively easy: the claimant need only show that he "do[es] the ship's work."  *Becker*, 335 F.3d at 387-88 (citing *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172; *In re Endeavor Marine, Inc.*, 234 F.3d 287, 290 (5th Cir. 2000)).  Defendants concede that "[f]or the purposes of this motion, Defendants do not dispute that Plaintiff's duties as a steward contributed to the function of the L/B MAMMOTH ELEVATOR and

6

the accomplishment of its mission, and that the first requirement of *Chandris* is met." (Def. Mem. in Supp. p. 11.)   However, the second prong – whether Plaintiff has a connection to a vessel in navigation or an identifiable group of vessels that is substantial in terms of both nature and duration – is in dispute in this case.

Regarding the second prong, "[t]he requirement of a substantial connection to a vessel is intended 'to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation.'"  *Becker*, 335 F.3d at 388 (quoting *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172).  The Supreme Court noted,

> the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon.  The duration of the worker's connection to a vessel and the nature of the worker's activities taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Id.* (quoting *Chandris*, 515 U.S. at 370, 115 S.Ct. 2172 (internal citations and quotation marks omitted)).  This second element represents a "status based" standard; accordingly, "it is not the employee's particular job that is determinative [of seaman status], but the employee's connection to a vessel."  *Id.* (quoting *Chandris*, 515 U.S. at 364, 115 S.Ct. 2172).

Concerning the duration element, the Fifth Circuit clarified that "[w]hile seaman status is not simply a temporal concept, the amount of time a worker spends aboard a vessel in navigation is helpful in determining if that worker has attained seaman status."  *Id.* (citing *Chandris*, 515 U.S. at 371, 115 S.Ct. 2172).   Indeed, the Fifth Circuit quantified the duration necessary to allow

submission of the issue of seaman status to a jury by using a 30 percent rule of thumb. *Id.* "[A]s a general rule, [a worker] must show [substantial duration] by demonstrating that 30 percent or more of his time is spent in service of that vessel." *Id.* at 388-389 (quoting *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 375 (5th Cir. 2001)). In *Chandris*, the Supreme Court endorsed this rule:

> Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. . . . And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict.

*Id.* at 389 (quoting *Chandris*, 515 U.S. at 371, 115 S.Ct. 2172).

The 30 percent floor does not change when an "identifiable group" of vessels in navigation is at issue, rather than just one vessel. *Roberts*, 266 F.3d at 375. In *Chandris*, the Supreme Court discussed the Fifth Circuit's modification of the test for seaman status when more than a single vessel is involved: "[s]oon after *Robison*, the Fifth Circuit modified the test to allow seaman status for those workers who had the requisite connection with an 'identifiable fleet' of vessels, a finite group of vessels *under common ownership or control*." *Id.* (quoting *Chandris*, 515 U.S. at 366, 115 S.Ct. 2172) (emphasis added in *Roberts*).

The Supreme Court specifically rejected a "voyage test" of seaman status under which a worker could "walk into and out of coverage in the course of his regular duties." *Becker*, 335 F.3d at 389 (citing *Chandris*, 515 U.S. at 363, 115 S.Ct. 2172). Rather, a change in coverage under the Jones Act occurs only when the status of the worker changes. *Id.* (citing *Chandris*, 515 U.S. at 363, 115 S.Ct. 2172).

8

As Plaintiff bears the burden of proof for establishing seaman status, he accordingly must show that he fits within the framework of *Chandris*. *See*, *Becker*, 225 F.3d at 390. Plaintiff argues that approximately half of his days worked were aboard vessels owned or operated by Cross Marine. (Pla. Mem. in Supp. p. 5.) Therefore, according to Plaintiff, he had a connection to a fleet of vessels under common ownership or control. (*Id.* at p. 10.)

Defendants assert that Parker cannot meet the second prong of the *Chandris* test because he cannot show that he performed a significant amount of his work aboard the L/B MAMMOTH ELEVATOR with any "degree of regularity and continuity." (Def. Mem. in Supp. p. 3.) In support, Defendants cite the affidavit of Thomas Wayne Holmes, the Health, Safety and Environmental Director for Trinity, which establishes that Trinity did not own or operate any of the vessels upon which Plaintiff worked during his employment at Trinity. (Affidavit of Thomas Wayne Holmes, ¶ 7.) Trinity provides contract labor to various oilfield companies on land-based jobs, fixed platforms, and vessels. (*Id.* at ¶ 3.) Trinity assigns its employees to short-term assignments for various clients on various locations based on the client's needs. (*Id.* at ¶ 5.) Job orders are assigned to the available employee based on how long it has been since an employee's last job and his travel distance to the job. (*Id.* at ¶ 6.) Mr. Holmes contends that Trinity never permanently assigned Parker to any particular vessel or company. (*Id.* at ¶ 4.)

Defendants cite cases involving Trinity Catering, in which the Court held that the plaintiff did not satisfy the *Chandris* test for seaman status. For instance, in *Brown v. Trinity Catering, Inc.*, the Court stated that "the court must look beyond Brown's brief actual employment history at Trinity to Trinity's established employment patterns and practices." No. 06-5756, 2007 WL 4365384, *6

(E.D. La. Dec. 11, 2007) (Livaudais, J).  Consequently, the Court noted that, "given its documented practice of randomly assigning its employees to hundreds of vessels owned by more that [sic] two hundred different owners, it is highly unlikely that Brown would have spent 30 percent of his time on a vessel or a group of vessels owned by Manson." *Id.*  However, *Brown* is distinguishable from the present case.  Brown worked only two hitches aboard a particular vessel during his brief employment with Trinity; he was injured at the end of his second hitch, and although he was assigned to a different vessel, he did not return to work his next assignment.  *Id.* at *1.  The Court looked to Trinity's practices in an effort to adhere to the *Chandris* "instruct[ion] that this inquiry into plaintiff's seaman status should not be confined to a 'snapshot' of Brown's employment," while recognizing that "[c]onsidering the brevity of Brown's employment by Trinity, a 'snapshot' is all that Brown had provided the Court."  *Id.* at *6.

Similarly, in *Drake v. Danos and Curole Marine Contractors, LLC*, the Court discussed the practices of Trinity and the way in which job orders are assigned.  Nos. 04-3522, 05-6657, 2007 WL 781972, *5 (E.D. La. March 13, 2007) (Engelhardt, J).  However, in *Drake*, the plaintiff "did not work any vessel with any regularity or continuity."  *Id.*  Rather, the plaintiff's only argument in opposition to summary judgment was that in his understanding, the assignment to the vessel on which he was injured was permanent.

Furthermore, Defendants cite *Schad v. Tetra Technologies, Inc.*, in which the Court held that the plaintiff was not a seaman because "[w]hile he may have spent 70% of his time working on different vessels while employed by Tetra, his presence on any particular vessel, including [the vessel on which he was injured], was 'transitory or sporadic.'" No. 96-1126, 1996 WL 736983, *3

10

(E.D. La. Dec. 20, 1996) (Clement, J).  In that case, although his job assignments were on a "job-by-job basis," the plaintiff argued that he spent 70% of his time employed by Tetra, "working on vessels," rather than alleging a connection to a particular group of vessels.  *Id.* at *2.  However, having examined the evidence submitted in the present case, the Court finds that the cases cited by Defendants are distinguishable.

The parties' evidence establishes that Plaintiff was employed by Trinity as a steward from September 2004 through June 2006.  (Pla. Mem. in Supp p. 3.; Def. Mem. in Supp. p. 4.)  During his period of employment, "Plaintiff worked on twenty-six (26) separate hitches, and at seventeen (17) different locations owned by eleven (11) different companies.  (Def. Mem. in Supp. p. 3.)  According to Plaintiff, Parker worked on two land jobs[1], two fixed platforms[2], and approximately nine vessels.  (Pla. Mem. in Supp. p. 4.)

The only time Plaintiff worked on a vessel owned by Elevating Boats/Jackup was the hitch on which Plaintiff alleges he was injured, which lasted less than a week.  (Def. Mem. in Supp. p. 5.)  At the time of the accident, Plaintiff was working on the L/B MAMMOTH ELEVATOR for the first time.  Consequently, the Court agrees with Defendants that Plaintiff did not perform a significant amount of his work aboard the L/B MAMMOTH ELEVATOR.  Moreover, the Court finds that the L/B MAMMOTH ELEVATOR was not part of an identifiable fleet of vessels under common ownership or control.

---

[1]Pla. Mem. in Supp. p. 4 (citing Pla. Exh. 3, Depo. of Trinity Catering, Inc., p. 20, line 24 to p. 21, line 5). Plaintiff worked twenty days on land, on the Goodrich E-5 and the Cross Dynergy.  (Def. Mem. in Supp. p. 4; Pla. Mem. in Supp. p. 4; Pla. Exh. 9.)

[2]*Id.* (citing Pla.Exh. 3, Depo of Trinity Catering, Inc., p. 21, lines 11 - 21).

However, "the total circumstances of an individual's employment must be weighed." *Becker*, 335 F.3d at 388 (quoting *Chandris*, 515 U.S. at 370, 115 S.Ct. 2172). Considering the total circumstances of Plaintiff's employment, the Court finds that Parker was, in fact, a seaman for the purposes of the Jones Act, as he had a connection to an identifiable group of vessels in navigation that was substantial in duration and nature.

Defendants calculated Plaintiff's total days worked during his time with Trinity as 433.[3] (Def. Mem. in Supp. p. 4.)  Plaintiff worked a total of 219 days aboard vessels owned and/or operated by Cross Marine.[4]  According to the Court's calculations, Plaintiff worked approximately half of his time at Trinity aboard the CROSS MAR 14 and CROSS MAR 15, construction barges owned or operated by Cross Marine.[5] As such, the CROSS MAR 14 and 15 comprised an

---

[3]The Court notes Plaintiff's exhibit 9, in which Plaintiff calculates the total "days on" from hire date as 422. The difference in these figures is reconciled by adding the five days on the L/B MAMMOTH ELEVATOR after Plaintiff's accident and the six days he worked on the HERCULES JACKFISH, a lift boat.  (See, Pla. Exh. 9; Def. Mem. in Supp. p. 4.)  422 + 5 + 6 = 433.

Of those days, Plaintiff spent twenty on two land-based camps and nineteen on two fixed platforms.  (Def. Mem. in Supp. p. 4; Pla. Exh. 9.)

[4]The Employee Job History, as well as exhibits submitted by Plaintiff and Defendants establish that Plaintiff worked on the Cross Mar 14 and Cross Mar 15 in the following intervals:

| DATES | DAYS | JOB/VESSEL |
|---|---|---|
| 02/11/05 to 03/10/05 | 27 | Cross Mar 14 – Construction Barge |
| 04/07/05 to 04/30/05 | 23 | Cross Mar 14 – Construction Barge |
| 07/26/05 to 08/27/05 | 32 | Cross Mar 14 – Construction Barge |
| 09/12/05 to 10/04/05 | 22 | Cross Mar 14 – Construction Barge |
| 10/08/05 to 11/11/05 | 34 | Cross Mar 14 – Construction Barge |
| 11/21/05 to 12/19/05 | 28 | Cross Mar 14 – Construction Barge |
| 12/27/05 to 1/22/06 | 26 | Cross Mar 14 – Construction Barge |
| 02/04/06 to 02/24/06 | 20 | Cross Mar 14 – Construction Barge |
| 05/16/06 to 05/23/06 | 7 | Cross Mar 15 – Construction Barge |
| **TOTAL:** | **219** | |

(Def. Mem. in Supp. p. 4.)

[5] $219 / 433 * 100\% = 50.57\%$

12

"identifiable fleet of vessels subject to common ownership and control."  The employer need not be the owner or operator of the group of vessels.  *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 890 (5th Cir. 1993) (citing *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 245 (5th Cir. 1983)).

Plaintiff's subsequent assignment to the L/B MAMMOTH ELEVATOR was not a "fundamental change in status" such that Plaintiff's coverage under the Jones Act would disappear. Moreover, merely being "subject to reassignment [to a non-seaman role or status] . . . at some point later in time is of no moment" and does not in itself defeat a worker's seaman status.  *Becker*, 335 F.3d at 392 (citing *Manuel v. P.A.W. Drilling & Well Service, Inc.*, 135 F.3d 344, 352 (5th Cir. 1998)). An employer's claim that an employee "could have been assigned to other work locations" does not preclude that employee's seaman status.  *Id.* (citing *Manuel*, 135 F.3d at 352).

Accordingly, the Court finds that Plaintiff is a seaman within the meaning of the Jones Act due to his substantial connection to an identifiable group of vessels under the common ownership and/or control of Cross Marine.

### C.      Unseaworthiness

Plaintiff seeks summary judgment on the issue of unseaworthiness.  He alleges that "it is undisputed that [he] was sitting in a chair when a leg of the chair broke."  (Pla. Mem. in Supp. p. 12.) According to Plaintiff, "[t]he chair aboard the vessel was clearly an appurtenance to the vessel" and "[t]he chair was clearly defective in that it broke."  (*Id.*)  Plaintiff cites the affidavit of Joshua Broussard, Superintendent of Superior Energy, for the proposition that the chair did not belong to Superior and Superior did not bring it aboard the vessel.  (*Id.*)  Plaintiff contends that "[t]hese facts

are sufficient to establish an unseaworthy condition aboard the vessel." (*Id.*)

In opposition, Defendants argue that genuine issues of material fact exist. Specifically, Defendants direct the Court to the issue of whether Plaintiff was leaning back in the plastic chair at the time of the accident. (Def. Mem. in Opp. p. 7.) Moreover, Defendants contend that there are genuine issues of fact regarding whether the chair in question was brought aboard by Elevating Boats/Jackup and whether such an item should be considered an appurtenance. (*Id.* at p. 8.)

Under the maritime doctrine of unseaworthiness, the vessel owner is required to furnish a vessel reasonably fit for its intended purpose. *Rushing v. United States of America*, 1997 WL 800822, *3 (E.D. La. Dec. 30, 1997) (citing *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); *Webb v. Dresser Indus.*, 536 F.2d 603, 606 (5th Cir. 1976)). The duty imposes liability without fault. While the plaintiff asserting a claim of unseaworthiness need not establish negligence or fault, "the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Boudreaux v. U.S.*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). Moreover, the seaman bears the burden of showing that the unseaworthy condition, *i.e.*, the inadequacies of the ship or its equipment, "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Perkins v. Wood Towing Co.*, No. 97-3664, 1999 WL 777734, *3 (E.D. La. Sept. 29, 1999) (quoting *Phillips v. Western Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992); *Springborn v. American Comm. Barge Lines, Inc.*, 767 F.2d 89, 97 (5th Cir. 1985)).

14

Under both the Jones Act and the doctrine of unseaworthiness, the seaman's ordinary negligence is a defense to a claim. *Rushing*, 1997 WL 800822, at *2 (citing *Marceaux v. Conoco, Inc.*, 124 F.3d 730, 734-35 (5th Cir. 1997); 2 Norris, *Law of Seaman* § 30:32 (4th ed. 1984)).  Under both types of claims, contributory negligence on the part of the seaman does not bar recovery but rather serves to reduce the seaman's damages in proportion to the degree of his negligence. *Id.*

The Court finds that summary judgment is inappropriate on the issue of unseaworthiness because the record demonstrates that genuine issues of fact exist as to the events leading to the accident.  For instance, according to Plaintiff's Amended Complaint, Parker was sitting in the chair aboard the vessel "when a chair suddenly and without warning broke causing Darryl Parker to fall backwards and strike his head on a steel wall."  (Pla. Amended Compl. ¶ VII).  In his deposition, Plaintiff repeatedly stated that he was not leaning back in the chair at the time in question.  (Def. Exh. 2, Depo. of Darryl Parker, p. 132, lines 3-5 and 18-20).  For example, he asserted, "No, that's the one thing I will not do offshore because I do follow the safety rules."  (Def. Exh. 2, p. 131, lines 7-10.)  Contrary to Plaintiff's assertion that he was not leaning back, Tommy Bonvillian, a galleyhand aboard the L/B MAMMOTH ELEVATOR, stated in his deposition that Plaintiff told him after the accident that he was leaning back and that Plaintiff acknowledged that he should not have been leaning back in the chair.  (Def. Mem. in Opp. p. 7) (citing Exh. 2 – Depo. of Tommy Bonvillian, pp. 33, 41, and 57.)

Accordingly, the Court finds that genuine issues of material fact exist regarding the events leading to the accident.  As such, summary judgment on the issue of unseaworthiness is inappropriate.

15

**D.      The *McCorpen* defense**

Defendants assert that Parker is not entitled to maintenance and cure because he intentionally concealed a prior neck injury when he applied for employment.   (Def. Mem. in Supp. p. 21.) Plaintiff opposes summary judgment on this issue.   Essentially, Plaintiff's opposition hinges on the fact that Defendants fail to offer any medical evidence regarding Plaintiff's current and past injuries. (Pla. Mem. in Opp. p. 4.)   Rather, Defendants offer an allegedly unsworn transcription of a statement given by Plaintiff after a prior accident, which Plaintiff challenges as not in compliance with Federal Rule of Civil Procedure 56(c).   (*Id.*)   However, assuming the facts in the unsworn statement are "close to accurate," Plaintiff argues "it is clear that the injuries never rose to the level of even requiring medical treatment."   (*Id.*)

A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits.   *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987)).   An employer is allowed to rely on certain legal defenses to deny these claims, such as the defense that the injured seaman willfully concealed a preexisting medical condition from his employer.   *Id.* (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1986)).   "[W]here the [employer] requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure."   *Id*. at 173 (citing *McCorpen*, 396 F.2d at 549).

To establish a *McCorpen* defense, an employer must demonstrate that:

(1) the claimant intentionally misrepresented or concealed medical facts;
(2) the non-disclosed facts were material to the employer's decision to hire the

16

claimant; and
(3) a connection exists between the withheld information and the injury complained
of in the lawsuit.

*Id.* at 171 (citing *McCorpen*, 396 at 548-49).

For the reasons that follow, the Court finds that Defendants have not satisfied their burden in establishing this defense.

### 1.    Intentional Misrepresentation

*McCorpen*'s intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination. *Id.* at 175. Rather, this prong "is an essentially objective inquiry." *Id.* at 174. "The intentional concealment element does not require a finding of subjective intent." *Id.* "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information satisfies the 'intentional concealment' requirement." *Id.* (quoting *Vitcovich v. Ocean Rover, O.N.*, 106 F.3d 411 (9th Cir. 1997)).

Regarding intentional misrepresentation of material facts, Defendants submit the following. Defendants aver that in pre-employment forms dated September 2, 2004, Plaintiff failed to disclose a prior neck injury from November 2003. (Def. Mem. in Supp. p. 21.) Moreover, he answered "No" to all questions concerning any previous injury listed on the questionnaire. (*Id.*) Specifically, Plaintiff allegedly answered "No" to a question asking whether he had missed work due to any previous injury. (*Id.*) Neither party submitted excerpts from Parker's deposition on this issue.

### 2.    Materiality

Trinity contends that Parker's misrepresentation was material to its hiring decision. According to Defendants, the requirements that Plaintiff provide an application and medical history

17

and undergo a physical examination prior to being offered a position "were calculated to ascertain the existence of any medical condition which might impact Plaintiff's ability to perform his job duties." (Def. Mem. in Supp. p. 22.)

According to the Fifth Circuit, "[t]he fact that an employer asks a specific medical question on an application, and that inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175.

Parker's prior neck injury is the exact type of information sought by an employer like Trinity. By specifically instructing the applicant to "[c]heck the appropriate space whether or not you currently have or previously have had . . . [n]eck [i]njury," Trinity arguably based its hiring decision, at least in part, upon whether the applicant had a prior neck injury. (*See*, Def. Exh. 1, Post Offer Medical History.) Accordingly, the omission of any reference to his prior neck injury from any of the forms required in the hiring process is a misrepresentation that was material to the hiring decision.

### 3.     Causation

"Case law reflects that even an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained." *Brown*, 410 F.2d at 175 (quoting *Howard v. A.S.W. Well Serv. Inc.*, No. 89-2455-L, 1991 WL 365060, *2 (W.D. La. Dec. 5, 1991)). In establishing the requisite causal relation, "there is no requirement that a present injury be identical to a previous injury. All that is

required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *Id.* at 176 (quoting *Quiming v. Int'l Pac. Enters, Ltd.*, 773 F.Supp. 230, 236 (D. Haw. 1990); *McCorpen*, 396 F.2d at 549).

Defendants assert that there is a "clear connection between the illness that Plaintiff failed to disclose and the present disability for which he seeks maintenance and cure." (Def. Mem. in Supp. p. 22.) Specifically, Defendants argue that Trinity has established the causal link between the concealed information and the accident which forms the basis of this suit because "Plaintiff's prior injury was an injury to the neck"[6] and "[i]n the instant matter, he is claiming neck injuries as well." (*Id.*)

The Court does not consider this sufficient to establish a causal connection. Defendants offer no medical testimony to augment their argument of causality. The Court has reviewed the "Statement of Darryl Parker – 1/12/04" recorded following a car accident prior to his employment at Trinity.[7] This statement fails to reveal the requisite casual connection.

---

[6]The Court notes that in Plaintiff's complaint he alleges a back injury in addition to neck injury. The "Statement of Darryl Parker," recorded after a prior car accident, also discusses back injury following the car accident. However, Defendants do not address Plaintiff's prior back injury in their discussion of the *McCorpen* defense.

[7]Regarding Plaintiff's neck injury, the Court notes the following:

| | |
|---|---|
| GM | Were you injured? |
| DP | Yeah, I did have a little injury in my neck, it still hurts sometimes. But, it ain't . . . [incomplete statement] |
| GM | But, you had pain in your neck, soreness? |
| DP | Yeah, it still hurts, sometimes, you know |
| . . . | |
| GM | Do you think it's improving is what I'm getting at? Or is it the same as it was . . . ? |
| DP | When it does hurt, it's the same. But, like I said, it doesn't hurt all the time. |
| . . . | |
| DP | Tell you what, I wake up one morning and I can't turn my neck at all, then I'll go to the doctor, you know, but before that . . . . I'm not going to the doctor. |

No evidence exists in the record that Plaintiff's neck was re-injured due to the accident or that the previous injury contributed to his accident.  Thus, Defendants are not entitled to rely on the *McCorpen* defense for denial of maintenance and cure.  *See McCorpen*, 396 F.3d at 549 (citing *Hazelton v. Luckenbach Steamship Co.*, 134 F.Supp. 525 (D. Mass. 1995)).

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 49)** filed by plaintiff Darryl Parker is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** insofar as the Court finds that Plaintiff is a seaman.  The motion is **DENIED** as to the issue of unseaworthiness.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 50)** filed by defendants Trinity Catering, Inc., Jackup Boat Service, LLC, and Elevating Boats is **DENIED.**

February 13, 2008

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

(Def. Exh. 3, statement of Darryl Parker, p. 8-9.)